# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| JAMES A. HEGEDUS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 5:16-CV-001 |
| v. | ) |
| | ) |
| NATIONSTAR MORTGAGE, LLC, | ) By: Michael F. Urbanski |
| | ) United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This is a mortgage servicing dispute. Pro se plaintiffs James and Virginia Hegedus ("plaintiffs") allege defendant Nationstar Mortgage, LLC ("Nationstar") violated various federal and state laws in its capacity as the servicer of a mortgage on a Delaware residence owned by plaintiffs. Plaintiffs cite a range of wrongdoing by Nationstar, centering on multiple alleged misrepresentations about the mortgage's status, failure to respond to plaintiffs' written requests for information, mishandling of payments, and wrongful assessments of fees and charges. Nationstar moved to dismiss, ECF No. 9, plaintiffs filed several motions to strike Nationstar's evidence and legal arguments, ECF Nos. 15, 16, and this matter was referred to United States Magistrate Judge Joel C. Hoppe for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).

In a report and recommendation issued on June 15, 2016, the magistrate judge recommended that the court grant Nationstar's motion to dismiss. ECF No. 26. The report gave notice to the parties that they had fourteen days within which to file any objections.

1

The same day, the magistrate judge filed an order disposing of plaintiffs' motions to strike.[1] ECF No. 27. On June 23, 2016, plaintiffs filed a motion for extension of time to respond to the report and recommendation. ECF No. 28. By order entered the same date, the magistrate judge extended the time for objections until July 15, 2016. ECF No. 29. Plaintiffs thereafter timely filed objections to the report,[2] ECF No. 30, and Nationstar responded on July 29, 2016, ECF No. 31. For the reasons stated below, the court will **OVERRULE** plaintiffs' objections, **ADOPT** the report and recommendation in its entirety, and **DISMISS** this case.

## I.

Rule 72(a) of the Federal Rules of Civil Procedure permits a magistrate judge to issue a written order on a matter "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1)(A). When such an order is objected to, the district judge should modify or set aside the order only if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Under this standard, the reviewing court should not "decide factual issues de novo" but, rather, should decline to act unless the court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (internal quotation marks omitted) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123 (1969), and United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). If the order is "plausible in light of

---

[1] The order denied plaintiffs' motion to strike Nationstar's evidence (a copy of plaintiffs' mortgage document), and construed plaintiffs' motion to strike Nationstar's legal arguments as additional briefing in opposition to Nationstar's motion to dismiss. ECF No. 27.

[2] In their objections, plaintiffs also take issue with the magistrate judge's order on their motions to strike. The court notes that plaintiffs only asked for, and only received, an extension of time to file objections to the report and recommendation, and thus their objections to the magistrate judge's order are arguably untimely. See ECF Nos. 28, 29. Nonetheless, in recognition of plaintiffs' pro se status, the court will consider their objections to the order as well as to the report and recommendation.

the record," it should not be disturbed, even if the reviewing court "would have weighed the evidence differently." Id. at 574.

Under Rule 72(b), the magistrate judge issues a report and recommendation on dispositive matters to the district court. A party may then "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. Fed. R. Civ. P. 72(b); see also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a

3

failure to object, or as a waiver of such objection." <u>Moon v. BWX Techs., Inc.</u>, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing <u>Veney v. Astrue</u>, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)), <u>aff'd</u>, 498 F. App'x 268 (4th Cir. 2012); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue <u>de novo</u> if no objections are filed . . . .").

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." <u>Ibarra v. United States</u>, 120 F.3d 472, 474 (4th Cir. 1997).

While the court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>see also</u> <u>Wag More Dogs, LLC v. Cozart</u>, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept

4

legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). To be sure, a plaintiff proceeding pro se is held to "less stringent standards" than counseled plaintiffs, and the court must construe his claims liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the court need not ignore a clear failure to allege facts that set forth a cognizable claim. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). Nor is a court required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).

In considering a motion to dismiss, the court is "generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). However, other evidence may sometimes be consulted:

> [The court] also considers documents that are explicitly incorporated into the complaint by reference, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and those attached to the complaint as exhibits, see Fed. R. Civ. P. 10(c). And . . . [the court] may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity. [Sec'y of State for Defence v.] Trimble [Nav. Ltd.], 484 F.3d [700], 705 [(4th Cir. 2007)]; Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

Id. at 166.

### III.

Plaintiffs allege that they entered a mortgage loan agreement with First Horizon Home Loans in 2006, for which they began making payments to Nationstar in 2011. ECF

5

No. 1, ¶ 5. Thereafter, according to plaintiffs, "Nationstar immediately engaged in deceptive and unfair practices." Id. These practices include failure to provide required disclosures, failure to respond satisfactorily to correspondence, and a host of fraudulent accounting practices. Id. ¶¶ 5, 7–9, 14, 18, 23–26. In addition, Nationstar variously identified itself as to plaintiffs as debt collector and mortgage servicer, and appeared as mortgagee on plaintiffs' homeowner's insurance policy—a "changing [of] positions" that plaintiffs allege is wrongful. Id. ¶¶ 10–13. Finally, plaintiffs complain that their mortgage note was wrongfully securitized, and that counsel for Nationstar corresponded with them in a deceptive manner, employing a "slight [sic] of hand tactic." Id. ¶¶ 13, 16–17 (internal quotation marks omitted). Plaintiffs allege that these actions violate several federal statutes: the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p; and the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §§ 2601–2610, 2614–2617.[3] In addition, plaintiffs allege common law claims of fraud, unjust enrichment, and intentional infliction of emotional distress.[4] ECF No. 1, at 14.

Nationstar subsequently brought a motion to dismiss, ECF No. 9, to which it attached a copy of plaintiffs' mortgage agreement, ECF No. 9-1. In its brief in support of the motion to dismiss, Nationstar construed plaintiffs' allegations of "deceptive trade practices," see ECF No. 1, ¶¶ 6(b), 6(c), 6(f), 15, as "attempting to state a claim pursuant to

---

[3] Plaintiffs also cite to Title XIV, Subtitle E, of the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank"), Pub. L. No. 111-203, §§ 1461–1465, 124 Stat. 1376, 2178–85 (2010), and the "Unfair Practices Act." Id. ¶ 6. As the report rightly recognized, these citations duplicate plaintiffs' other federal claims. ECF No. 26, at 2 n.1. Plaintiffs declined to object to this finding, see ECF No. 30, and, accordingly, the court will only consider federal claims brought under TILA, FDCPA, and RESPA.

[4] Plaintiffs refer to the intentional torts of "misrepresentation and account manipulation" and "deceptive trade practices"—though whether the latter phrase is meant to allege a distinct cause of action or is merely used to describe Nationstar's behavior is unclear. See ECF No. 1, ¶¶ 6(b), 6(c), 6(f), 15. Plaintiffs' complaint as a whole suffers from a lack of specificity as to their intended causes of action; the court will, whenever possible, construe Plaintiffs' allegations liberally to best effectuate their claims.

6

Virginia's Consumer Protection Act" ("VCPA"), and argued against that claim. ECF No. 10, at 2. In response, plaintiffs filed motions to strike both the mortgage document and Nationstar's interpretation of its deceptive trade practices claim. ECF Nos. 15, 16.

## A. Nationstar's Motion to Dismiss

In his report, the magistrate judge recommended that Nationstar's motion to dismiss be granted in its entirety. ECF No. 26. First, the report found that plaintiffs did not have standing to challenge any transfer or assignment of the note, mortgage or servicing rights, and that securitization of the mortgage did not relieve plaintiffs of their debt obligation. Id. at 9.

Second, the report turned to Plaintiffs' federal statutory claims. It found that all Plaintiffs' claims under TILA, and all but one under FDCPA, are barred by these statutes' one-year limitations period, which runs from the date the alleged violations occurred.[5] Id. at 10. Plaintiffs' remaining FDCPA claim—relating to a July 2015 letter sent by Nationstar's counsel—was found to be so conclusory and lacking in proof as to fail to state a claim for relief. Id. The report recognized two categories of RESPA claims—Nationstar's failure to produce the original mortgage note, and its failure to respond to plaintiffs' purported qualified written requests ("QWRs"). Id. at 11. Neither was found to have merit: plaintiffs failed to allege why they were entitled to the original mortgage note (rather than a photocopy), and, even assuming the one letter plaintiffs actually produced[6] qualified as a

---

[5] Plaintiffs' complaint was filed on January 4, 2016, and the report found that any violation of TILA or FDCPA that occurred more than one year prior to that date would be time barred. See ECF No. 1; ECF No. 26, at 10.

[6] Plaintiffs alleged that they sent QWRs on August 25, 2014; June 6, 2015; June 15, 2015; June 19, 2015; and July 6, 2015. ECF No. 1, ¶ 18; ECF No. 26, at 11. The June 6 letter was the only alleged QWR attached to the complaint. See ECF No. 1-11.

7

QWR, plaintiffs failed to allege any pecuniary loss associated with this failure to respond. Id. at 11–12.

Third, the report turned to plaintiffs' common law claims; acknowledging that the complaint "is somewhat confusing" in this area, it nonetheless found that plaintiffs failed to state adequate grounds for relief. Id. at 12. All claims regarding misrepresentations or material omissions failed because plaintiffs did not allege detrimental reliance, id. at 12–13; unjust enrichment was found to be unavailable where, as here, defendant's actions were taken pursuant to a contract; and the intentional infliction of emotional distress claim was completely unsupported by any factual allegations. Id. at 13.

Finally, the report declined to specifically construe plaintiffs' "unclear" claims regarding institution of a forced escrow,[7] but found that, given the fact that the mortgage document specifically authorized creation of an escrow account, any such claim would be without merit and should be dismissed. Id. 12–13.

Plaintiffs brought a number of objections to the findings of the magistrate judge. Many of these objections do not warrant de novo review: some take issue with the precise wording of the report, e.g., ECF No. 30, at 14–15 (asserting that the court erred in using the term "pooled" to describe plaintiff's allegations of improper securitization), others imply bias on the part of the magistrate judge, e.g., id. at 7, 10 ("[T]he [c]ourt has aligned itself with the [d]efendant . . . ."), while still others suggest changes to controlling precedent based on social

---

[7] Nationstar took $140.17 from plaintiffs' mortgage payments and put it in escrow to pay county taxes on the secured property. ECF No. 1-8. Plaintiffs objected to this in their complaint, alleging that they had an escrow waiver, though they declined to attach it as an exhibit to their complaint, ECF No. 1, ¶ 7, and only brought the waiver into the record with their objections to the report and recommendation, ECF No. 30-3. For the purposes of ruling on Nationstar's motion to dismiss, the court will consider the escrow waiver, though not originally attached to plaintiffs' complaint, because it was "explicitly incorporated into the complaint by reference." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); ECF No. 1, ¶ 7; see supra p. 5. Nationstar did not challenge the legitimacy of the escrow waiver in its response to plaintiffs' objections. See ECF No. 31.

trends, e.g., id. at 13 ("Restricting a borrower[']s right[] to challenge assignments is fastly [sic] becoming passé." (emphasis omitted)).

Plaintiffs also object that the report analyzes claims they never intended to bring in the complaint. They deny that they ever challenged Nationstar's right to collect loan payments or, if necessary, to declare a default on the note, id. at 13; plaintiffs also now do "not challenge any transfer or assignment," of the note, and claim that the "[c]omplaint did not address these" points. Id. at 12. The complaint largely contradicts these assertions: it argued that "[a] servicer/debt collector [of a securitized loan] . . . cannot effect a default or accelerate the loan," ECF No. 1, ¶ 13, and repeatedly questioned the validity and even existence of the assignee of the note, id. ¶ 6(a) (arguing that assignee bank "was found to be non-existent"); id. ¶ 13 (alleging discrepancies in the identity of the note holder). Inconsistencies between the objections and the complaint aside, because plaintiffs now deny that they intended to pursue claims related to assignment of the note or Nationstar's right to collect on and accelerate the debt, the court will consider any such claims to be abandoned and decline to address them.

However, the objections do raise some specific points that merit a response. These objections can be broadly divided into three categories: common law claims, federal claims, and factual findings.[8] Each category of objection will be addressed in turn.

### 1. Common Law Claims

Plaintiffs primarily—and prolifically—lodge objections to the report's findings on their fraud claim. They repeatedly insist that they intended to bring an action for *loan-servicing*

---

[8] The first two categories contain objections to the legal conclusions of the magistrate judge, while the third objects to the report's factual findings.

*fraud*—a cause of action they assert is entirely distinct from common law fraud. ECF No. 30, at 2–4, 9–10, 15. Second, they reject the report's finding that a fraud claim is precluded where both parties act pursuant to a contractual relationship: because plaintiffs only contracted with the original mortgagee, and have no contractual relationship with Nationstar, they contend that an action for "loan-servicing fraud" should be permitted. Id. 8–9.

These objections must be overruled. Plaintiffs are mistaken in their contention that loan-servicing fraud is a distinct cause of action from common-law fraud. Rather, the phrase "loan-servicing" acts merely as a compound adjective, specifying the type of conduct that gave rise to the common law fraud action. Just as fraud claims can arise alongside alleged securities violations, e.g., Glaser v. Enzo Biochem, Inc., 464 F.3d 474 (4th Cir. 2006), legal malpractice claims, e.g., CSX Transp., Inc. v. Gilkison, 406 F. App'x 723 (4th Cir. 2010), bankruptcy proceedings, e.g., Christopher's Ariz. Transp. Serv., Inc. v. Duncan, 217 F.3d 838 (4th Cir. 2000), or a host of other circumstances, so too can a loan-servicing dispute give rise to a common law fraud claim. This context, does not, however, change the underlying cause of action or the elements thereof, and, the court declines to fashion a new cause of action specific to the loan-servicing arena.

Moreover, the report correctly concluded that plaintiffs' fraud claims should be dismissed.[9] At no point in their complaint or objections do plaintiffs ever allege detrimental reliance on any of Nationstar's representations. ECF No. 26, at 12; see ECF Nos. 1, 30. To the contrary, plaintiffs repeatedly emphasize the skepticism with which they viewed

---

[9] Plaintiffs emphasize that they "did not sue for *common law* fraud," ECF No. 30, at 3; nonetheless, because their purported "loan-servicing fraud" claim is not a distinct cause of action, the court will analyze their fraud claims under the common law rubric.

10

Nationstar's correspondence. E.g., ECF No. 1, ¶ 9 (describing plaintiffs' choice to refrain from cashing a check sent by Nationstar, in order to avoid falling prey to an alleged "bait and switch tactic" (internal quotation marks omitted)). Absent even the barest allegation of reasonable reliance or damages incurred therefrom, plaintiffs have failed to plead the required elements of common law fraud.[10] See, e.g., JKC Holding Co. v. Wash. Sports Ventures, 264 F.3d 459, 469 (4th Cir. 2001) ("The elements of common law fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." (internal quotation marks and citation omitted)).

Plaintiffs have failed to adequately plead common law fraud, and their objections to the contrary are unavailing. In addition, plaintiffs decline to object to the report's conclusion that their unjust enrichment[11] and intentional infliction of emotional distress claims are without merit and should be dismissed. Accordingly, the report is **ADOPTED**, and plaintiffs' claims for unjust enrichment and intentional infliction of emotional distress are **DISMISSED with prejudice**; plaintiffs' fraud claim is **DISMISSED without prejudice**.

---

[10] Even had plaintiffs adequately pleaded common law fraud, that cause of action might be unavailable here: all alleged misrepresentations took place pursuant to Nationstar's contractual duties, a situation which ordinarily forecloses a fraud claim. See Jones v. Bank of Am. Corp., No. 4:09cv162, 2010 WL 6605789, at *8 (E.D. Va. Aug. 24, 2010) (holding that an action for fraud requires that the "alleged misrepresentation was unrelated to [] performance" under the contract). True, plaintiffs' mortgage agreement was not with Nationstar. See ECF No. 1-5. But, the mortgagee delegated all rights and responsibilities related to the collection of payments to Nationstar; the actions taken by Nationstar in servicing the mortgage loan (and all alleged misrepresentations) were made pursuant to the contract plaintiffs originally signed with the note holder. See ECF No. 26, at 1; 12 U.S.C. § 2605(i)(3) (defining mortgage "servicing" as receiving such payments "as may be required pursuant to the terms of the loan"). Given that plaintiffs failed to adequately plead common law fraud, the court need not conclusively determine whether the absence of direct privity of contract between plaintiffs and Nationstar would permit a properly pleaded fraud claim to go forward, despite the contractual nature of the parties' rights and responsibilities.

[11] Plaintiffs do object to the report's factual findings as to Nationstar's right to put funds into escrow—an objection that could bear on the validity of their unjust enrichment claim. See ECF No. 30, at 16–17. However, they do not object to the report's finding that the contractual relationship between Nationstar and the plaintiffs would preclude even an otherwise valid unjust enrichment claim. See ECF No. 26, at 13. Moreover, plaintiffs' objections to the report's factual findings on escrow do not establish the viability of their unjust enrichment claim. See infra pp. 16–17. For both these reasons the court adopts the report's findings on unjust enrichment.

11

## 2. Federal Statutory Causes of Action

Plaintiffs contest three of the report's findings on their federal claims. They first object to the report's statute-of-limitations findings, and assert that the three-year TILA statute of limitations should apply, rather than the one-year limit.[12] ECF No. 30, at 4. Furthermore, they argue that this three-year period should have been tolled until plaintiffs actually became aware of the securitization of the note. Id. at 4–5.

Most civil suits under TILA are subject to a one-year limitations period from the date of the alleged offense. 15 U.S.C. 1640(e). TILA does provide a three-year limitations period for certain actions—specifically, those alleging a violation of §§ 1639, 1639b, or 1639c. Id. These three code sections impose certain requirements on mortgages, and pertain almost exclusively to the original mortgage document origination process.[13] See id. §§ 1639, 1639b, 1639c. Plaintiffs have simply alleged no actions that would fall under these code sections. They do not attack any aspect of the mortgage origination, and could not: Nationstar is merely the mortgage servicer, and would not be liable for any defects in the original mortgage contract between plaintiffs and First Horizon Home Loans. See ECF No. 1-5. The TILA one-year limitations period applies to plaintiffs' TILA claims.

Moreover, plaintiffs have failed to persuade that this limitations period should be tolled. Plaintiffs argue the limitations period should not have begun to run until they became

---

[12] Plaintiffs lodge no objection to the report's finding that all FDCPA claims are either time-barred or meritless; in fact, in their only mention of the FDCPA, the plaintiffs argue against its applicability to their suit. See ECF No. 30, at 15 ("The [c]ourt has mistakenly stated violations of . . . FDCPA . . . as being asserted by plaintiffs."). Accordingly the court will adopt the findings of the magistrate judge in this regard. See ECF No. 26, at 10 (finding that all FDCPA claims were time-barred, with the exception of a claim arising from a July 2015 letter sent by counsel for Nationstar; this claim contained merely "a single conclusory allegation" of wrongdoing, and therefore dismissal was warranted).

[13] Section 1639(b)(2)(A) requires new disclosures to the mortgagor when the terms of a loan are changed. This would apply to some conduct subsequent to the origination of the mortgage. However, plaintiffs have alleged no modification, or lack of notification, that would implicate this code section.

12

aware of the securitization and pooling of their mortgage. But, they offer no precedent that supports this position, and fail to put forward any reason why the securitization would constitute a TILA violation.[14] Cf. Wittenberg v. First Indep. Mortg. Co., No. 3:10-cv-58, 2011 WL 1357483, at *8 (N.D. W. Va. Apr. 11, 2011) ("[P]laintiff has failed to cite a single case, and this [c]ourt's independent research was unable to discover one, which stands for the proposition that securitization is unlawful.") For an alleged fraud to justify equitable tolling of TILA's statute of limitations, plaintiffs must show:

> (i) that the party asserting the statute of limitations "concealed facts that are the basis of the plaintiff's claim"; (ii) that the "plaintiff failed to discover those facts within the statutory period"; and (iii) that the plaintiff failed to do so "despite . . . the exercise of due diligence."

Roach v. Option One Mortg. Corp., 598 F.Supp.2d 741, 752 (E.D. Va. 2009) (ellipsis in original) (citing Barnes v. West, Inc., 243 F. Supp. 2d 559, 563 (E.D. Va. 2003)). Plaintiffs have not begun to surmount this hurdle: they make no showing as to any of these requirements, beyond the conclusory statement that the statute of limitations should be tolled whenever plaintiffs discover securitization that was not disclosed in the original mortgage document. ECF No. 30, at 4–5. This will not suffice: plaintiffs' TILA claims are subject to the one-year limitations period, and, given that all alleged violations took place prior to January 1, 2016, are time barred.

   Plaintiffs next turn to RESPA, and dispute the report's finding that they failed to adequately allege that their correspondence met the definition of a QWR; they also contend

---

[14] To the extent that they believe securitization would prevent Nationstar from collecting on the loan or declaring a default, that argument is without precedential support, and seems to have been expressly disavowed by the plaintiffs. See ECF No. 30, at 13 ("No where [sic] in [p]laintiffs' complaint is any reference made to an extinguishment of debt or Nationstar's inabilitiy [sic] to find them in default."); supra p. 9.

13

that they are entitled to statutory damages under RESPA, and need not allege any actual harm suffered. Id. at 6. As the report noted, plaintiffs submitted only one purported QWR as an exhibit to their complaint, but alleged that a total of five were sent. See ECF No. 1, ¶18; ECF No. 1-11. They did not rectify this omission when they submitted their objections. Furthermore, beyond labeling these four withheld letters "qualified written requests," plaintiffs give no details as to their contents in either the complaint or their objections. Quite simply, in alleging that Nationstar failed to respond to the four alleged QWRs that they decline to provide, plaintiffs "have not nudged their claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).

The remaining purported QWR—a letter sent by plaintiffs on June 6, 2015— requested that Nationstar (1) provide its "authority to establish an escrow account"; (2) explain purportedly commingled funds; (3) clarify why Nationstar is listed as mortgagee on homeowners' insurance policy; and (4) clarify if the mortgage's securitization trust still existed. ECF No. 1-11. Plaintiffs rightly point out that RESPA defines QWR broadly, ECF No. 30, at 5; any written correspondence that identifies the borrower and "includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail" of other information sought will be deemed a QWR. 12 U.S.C. § 2605(e)(1)(B). Nonetheless, even assuming that this letter qualifies as a QWR, plaintiffs have failed to allege "any actual damages . . . as a result of the failure" to respond. Id. § 2605(f)(1); Vaughan v. Wells Fargo Bank, N.A., No. 6:15-cv-38, 2016 WL 2901752, at *4 (W.D. Va. May 18, 2016) ("Courts in this circuit have required [p]laintiffs to plead statutory and actual damages to state a claim under RESPA." (citing Bradford v. HSBC Corp., No. 1:09cv1226,

2010 WL 9067298, at *7 n.6 (E.D. Va. Sept. 20, 2010))), appeal filed, No. 16-1665 (4th Cir. June 13, 2016).

Nor can plaintiffs recover statutory damages. RESPA permits statutory damage recovery only when "a pattern or practice of noncompliance" has been demonstrated. Id.; 12 U.S.C. § 2605(f)(1). Plaintiffs have only substantiated the existence of one QWR, and fail to allege any facts that otherwise demonstrate multiple RESPA violations. Accordingly, their claims under RESPA are insufficient to establish even the minimal plausibility necessary to survive a motion to dismiss.

Plaintiffs' final objection under federal law is also their weakest. They argue that the report failed to construe their federal claims accurately, particularly as to the claim that Nationstar was mischaracterizing itself as loan servicer, debt collector, and mortgagee. ECF No. 30, at 15–16. They argue that, rather than asserting a claim under TILA, FDCPA, Dodd–Frank, or "Deceptive Trade Practices," Nationstar's alleged mischaracterization "is a violation of United States Code, Title 12, only." Id. at 16. A general invocation of Title 12, (which governs "banks and banking" and spans over 5500 code sections), lacks the specificity required to state a claim under federal law. Furthermore, plaintiffs have again failed to allege any damages resulting from Nationstar's allegedly wrongful vagueness as to their exact role in servicing plaintiffs' mortgage. The court also notes that the terms "servicer" and "debt collector" are not mutually exclusive; the former is defined broadly in 12 U.S.C. § 2605(i)(2) as "the person responsible for servicing the loan," while the latter is defined in 15 U.S.C. 1692a(6) as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

15

debts." That Nationstar designated itself as both servicer and debt collector at various times is unsurprising, and plaintiffs have failed to allege any facts that show it to be wrongful, or that they were harmed thereby.

Plaintiffs' federal causes of action are either time-barred or meritless. Accordingly, the report is **ADOPTED**; all claims under RESPA are **DISMISSED without prejudice**; plaintiffs' FDCPA claim arising from the July 2015 letter from counsel for Nationstar, <u>see</u> ECF No. 1, ¶ 17; ECF No. 26, at 10; <u>supra</u> p. 12 n.12, is **DISMISSED without prejudice**; all remaining FDCPA claims are **DISMISSED with prejudice**; and all claims under TILA are **DISMISSED with prejudice**.

### 3. Factual Findings

Plaintiffs also dispute two factual findings of the magistrate judge. They first argue that, contrary to the conclusions of the report, Nationstar was not entitled to put funds in escrow; plaintiffs attach a signed escrow waiver in support of this contention. ECF Nos. 30, 30-3 at 7; <u>see</u> <u>supra</u> p. 8 n.7.

Given the escrow waiver, this objection is not entirely unreasonable, though it is ultimately incorrect. The mortgage initially seems to require plaintiffs to provide "[f]unds for [e]scrow [i]tems," including "taxes and assessments," "leasehold payments or ground rents . . . if any," and "premiums for any and all insurance." ECF No. 9-1, at 5 ¶ 3. But, as plaintiffs alleged in their complaint, ECF No. 1, ¶ 7, an escrow waiver was signed contemporaneously with the mortgage. <u>See</u> <u>id.</u>; ECF No. 30-3. The waiver, which plaintiffs attached to their objections, restricts Nationstar's right to establish an escrow account; instead, plaintiffs were to "pay the [e]scrow [i]tems when due" themselves. ECF No. 30-3, at 2.

16

The escrow waiver is not, absolute, however. It expressly provides that "rights or remedies for default arising from untimely or incomplete payment of the [e]scrow [i]tems" are not waived. Id. These rights and remedies are delineated in the mortgage: if plaintiffs "fail[] to pay the amount due for an [e]scrow [i]tem, [l]ender may . . . pay such amount," in which case plaintiffs "shall then be obligated . . . to repay to [l]ender any such amount." ECF No. 9-1, at 5 ¶ 3. Thus the escrow waiver is conditional; Nationstar may not pay escrow items itself (and thus place payments from plaintiff in escrow) unless plaintiffs fail to make these payments themselves. Conversely, if plaintiffs do fail to make timely payment of escrow items, Nationstar is permitted to make these payments itself, and to place an equivalent portion of plaintiffs' funds in escrow. Plaintiffs are silent on this issue: they fail to allege that they made timely escrow payments directly to the appropriate parties.[15] Absent this showing, plaintiffs have presented no facts that demonstrate Nationstar's establishment of an escrow account was wrongful.[16]

Second, plaintiffs object that two letters from Nationstar[17] should be considered affidavits; they disagree with the report's characterization of this correspondence as a "payment history." ECF No. 30, at 14. This objection is not relevant to the merits of plaintiffs' claims. Whether the documents in question are termed affidavits, correspondence, or payment history, the fact remains that claims based on these letters are time-barred under TILA or FDCPA, see supra pp. 12–13, and plaintiffs have failed to otherwise show that

---

[15] Nationstar paid $140.17 to cover taxes due to Sussex County, Delaware. ECF No. 1, ¶ 7. Plaintiffs do not allege that they had already paid this amount on time, to Sussex County. If they failed to make this payment, Nationstar was within its rights to do so itself.

[16] The court also notes that even if plaintiffs had established that Nationstar had no right to establish an escrow account, an action for conversion would likely be more appropriate than the fraud and unjust enrichment claims plaintiffs chose to pursue.

[17] Letters dated 1/17/14 and 5/19/14, both from Karyne Nguyen, an assistant secretary for Nationstar. See ECF No. 1-7.

17

these letters were wrongful. Despite plaintiffs allegations to the contrary, "[two] documents signed by the same person with [two] different signatures" do not necessary represent an "example of servicing fraud." <u>See</u> ECF No. 30, at 14. Furthermore, plaintiffs have failed to allege that the discrepancy in signatures caused them to incur damages; this failure to plead damages remains whether or not these letters are described as payment histories or affidavits. In sum, plaintiffs' factual objections fail to establish that their claims should survive dismissal.

### B. Plaintiffs' Motions to Strike

In their objections, plaintiffs challenge the magistrate's disposal of two "motions to strike" filed by plaintiffs on February 23, 2016. Because the magistrate's order on these motions is "not dispositive of a party's claim or defense," Fed. R. Civ. P. 72(a); <u>see</u> 28 U.S.C. § 636(b)(1)(A), the court will disturb the order only if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). This is a lenient standard, and requires only that the order be "plausible," and not "leave a firm conviction that a mistake has been committed." <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573, 574 (1985) (citations and internal quotation marks omitted).

Plaintiffs' first motion to strike takes issue with an argument in Nationstar's motion to dismiss memorandum. Nationstar construed plaintiffs' allegations of "Deceptive Trade Practices" as attempting to state a claim under the Virginia Consumer Protection Act. <u>See</u> ECF No. 10, at 13–16. Plaintiffs disagreed with this construction of their claims, and asked the court "to strike any and all references and statements associated in any way with the Virginia Consumer Protection Act." ECF No. 16, at 1. Because "Nationstar's proposed

18

construction of [p]laintiffs' claims . . . is not a pleading," ECF No. 26, at 7, the magistrate construed this motion as additional briefing in response to the motion to dismiss. Plaintiffs then objected that "[t]he [c]ourt has completely misconstrued [p]laintiffs' motion to strike the VCPA," and reiterated that "Nationstar's arguments under the VCPA are clearly inapplicable." ECF No. 30, at 11.

Plaintiffs' point is well-taken, but does not provide any reason to disturb the order of the magistrate judge. The entire purpose of the motion to strike seems to be to establish that their claims should not have been construed under the VCPA. They have carried this point: the report declined to apply the VCPA to their claims, as this memorandum opinion does. There would be no need to strike Nationstar's arguments under the VCPA even if it were procedurally permissible to do so; once plaintiffs made clear that they did not intend to assert a claim under the VCPA, consideration of that statute ceased.

Plaintiffs' second motion asked that the mortgage document submitted by Nationstar as an attachment to their motion to dismiss be stricken from the record. ECF No. 15. They denied the legitimacy of the document, and accused Nationstar of spoliation, alleging that "[s]ome numbers ha[d] been deleted, other numbers added, and initials ha[d] been added to the face of the document." Id. at 2. Plaintiffs' tone subsequently softened: the report concluded, based on oral argument, that they "expressed concern only regarding minor changes to identifying marks, which reflect that the mortgage was recorded with the local registry of deeds." ECF No. 26, at 8. Accordingly, the magistrate judge concluded that "[p]laintiffs' argument against the document's authenticity [was] without merit," and treated

19

the terms of the mortgage "as a part of the pleadings to the extent they are integral to [p]laintiffs' complaint." Id.

In their objections, plaintiffs appear to again attack the legitimacy of the mortgage document. Critically, however, they specify that, in the complaint, they "argued against the authenticity of the document, itself, and did not contest the document's content." ECF No. 30, at 10. This suggests that plaintiffs' challenge is not to the contractual requirements contained in the mortgage, or even to the exact wording and appearance of the mortgage document. This, they admit, is legitimate. Rather, they seem to be arguing that the legitimate terms of the mortgage are reproduced on a document that is not the same physical piece of paper they signed. It is, in other words, a photocopy. Plaintiffs also do not object to the report's finding that the changes in identifying marks, numbers, and initials, were merely the result of recordation of the mortgage with the local registry of deeds.

This argument fails to demonstrate that inclusion of the mortgage documents in the pleadings is clearly erroneous. The court has no need to consult the original, physical copy of the mortgage. Instead, the critical inquiry is whether the document attached to Nationstar's motion to dismiss authentically reproduces the contractual terms of the original mortgage. This, plaintiffs admit—they have not alleged any inauthenticity as to the content of the mortgage. Any changes wrought in the process of recording the mortgage with the registry of deeds likewise do not bear on the court's analysis of the contractual terms contained therein. Plaintiffs have simply provided the court no reason to question the legitimacy of the mortgage document attached to Nationstar's motion to dismiss, and in fact affirm the veracity of its contents.

The court finds that plaintiffs have failed to demonstrate that the magistrate's order disposing of plaintiffs' motions to strike is clearly erroneous. Accordingly, plaintiffs' objection to the order is **OVERRULED**.

### IV.

For the reasons stated above, the court makes the following findings:

1. The court **ADOPTS** the report and recommendation (ECF No. 26) in its entirety.

2. The court **OVERRULES** plaintiffs' objections (ECF No. 30), both as to the report and recommendation and as to the magistrate's order disposing of plaintiffs' motions to strike.

3. The court **GRANTS** Nationstar's motion to dismiss (ECF No. 9). Plaintiffs' fraud claims, all claims under RESPA, and the FDCPA claim arising from the July 2015 letter from counsel for Nationstar are **DISMISSED without prejudice**; Plaintiffs' remaining FDCPA claims, all claims under TILA, and the claims for unjust enrichment and intentional infliction of emotional distress are **DISMISSED with prejudice**.

An appropriate Order will be entered this day.

Entered:  09/29/16

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge